IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SHIRLEY LEE                                                                    PLAINTIFF

V.                                                                              CIVIL ACTION NO.
                                                                                3:08-CV-108-SAA
MICHAEL J. ASTRUE,
Commissioner of Social Security                                                 DEFENDANT


**MEMORANDUM OPINION**

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Shirley Lee for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Lee's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

**PROCEDURAL HISTORY**

Shirley Lee filed a Title XVI application for supplementary security income on August 29, 2005. Lee alleged the onset of her disability was June 1, 2005. Tr.9, 71-75. The claims were administratively denied. Tr. 43-49, 54-56. The plaintiff timely filed a request for a hearing before an administrative law judge [ALJ] which was held on June 5, 2007. Tr. 17. On

1

August 31, 2007, the ALJ issued his decision denying the claim. Tr. 9-14. The Appeals Council denied her request for further review, Tr. 1-3, making the ALJ's decision the final decision of the Commissioner, now ripe for the court's review.

**FACTS**

Lee was born January 28, 1964; she was forty-one years old at the time of onset of alleged disability and forty-three years old at the time of the hearing. Tr. 9. Lee completed the eighth grade. Tr. 19-20. Her past relevant work included work as a field hand on a potato farm and sewer in a glove plant and furniture factories, however, these jobs did not constitute "substantial gainful activity." Tr. 9, 13, 39, 103. Lee alleged that she is unable to work due to lupus, joint pain, chronic fatigue syndrome, dizziness, migraine headaches, glaucoma, anemia, hypertension and anxiety. In addition, Lee was stabbed twenty-seven times in her head, neck and hands in September 1998. Tr. 23, 205.

The ALJ found that Lee experiences hypertension, anemia and a history of lupus, each of which constitutes a severe impairment according to the relevant regulations. Tr. 10. The ALJ, however, did not find that Lee had a severe visual impairment despite her history of glaucoma. Tr. 10. The ALJ reviewed the record, Lee's symptoms, the objective medical evidence, the consultative physician's report and determined that Lee's impairments did not meet or equal in severity the requirements in any impairment contained in the Listing of Impairments set forth in Appendix I of the regulations. He specifically found that she did not meet the listing for systemic lupus erythematosus. Tr. 11. He determined that Lee had the residual functional capacity [RFC] to lift/carry 10 pounds occasionally, stand/walk 2 hours during an 8-hour workday, sit without limitations and could occasionally stoop, kneel, crouch,

crawl, climb and balance. Tr. 12. The ALJ concluded that with her RFC, Lee was able to perform unskilled sedentary work, and that there are significant numbers of such jobs in the national economy. Tr. 12-13.

## DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner determines the plaintiff's residual functional capacity, and the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can

---

[3] *See* 20 C.F.R. § 416.920 (2009).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. § 416.920(a)(4)(i)(2009).

[6] 20 C.F.R. § 416.920(a)(4)(ii)(2009).

[7] 20 C.F.R. § 416.920(a)(4)(iii)(2009).

[8] 20 C.F.R. § 416.920(a)(4)(iv)(2009).

[9] 20 C.F.R. § 416.920(a)(4)(v)(2009).

perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

Lee contends that the Commissioner erred in the following ways:

1) misapplying the statement of an examining physician when posing a hypothetical to the vocational expert, and
2) failing to properly analyze the credibility of Lee's subjective complaints.

<u>Misapplying the Statement of an Examining Physician</u>

Lee argues that the ALJ erred when he presented the third hypothetical, which was based upon Dr. Steven Brandon's examination, to the vocational expert [VE] because SSR 96-9p requires a full range of bimanual dexterity for an individual to perform sedentary work. Docket # 12, p. 6. Dr. Brandon performed a consultative examination on Lee on March 19, 2007 and completed a medical source statement. Tr. 353-60. In the medical source statement Dr. Brandon found that Lee's feeling, pushing/pulling and seeing are affected by her impairments and that these findings were supported with the clinical symptoms of "painful joints-knees" and "glaucoma with impaired acuity." Tr. 357-59. The ALJ presented a hypothetical to the VE that included the "additional restrictions in feeling, and in pushing and pulling . . . ," Tr. 36, then noted that under SSR 96-9p if Lee did not have bimanual dexterity of the upper extremities, she would be considered disabled. Tr. 37. Consequently, Lee argues that she should be considered disabled in light of Dr. Brandon's evaluation.

The ALJ specifically discounted the weight he afforded Dr. Brandon's evaluation because Dr. Brandon only examined Lee on one occasion, and neither his physical examination of Lee nor the objective medical evidence supported his assessment of Lee's feeling and visual restrictions. Tr. 12. There was substantial evidence to support the diminished weight that the

---

[10] *Muse*, 925 F.2d at 789.

ALJ granted to Dr. Brandon's medical source statement. Dr. Brandon noted that Lee had some decreased feeling in her lower extremities as demonstrated by

> "Sensory to 5 millimeter monofilament is diminished from the iliac crest down the left leg. She also had absent 7 millimeter monofilament contact at S1 on th left; 7 millimeter is felt on the remainder of the left leg. She has no 4 millimeter feeling in the right leg. She reports contact with 5 millimeters in the right leg." Tr. 355.

Dr. Brandon's physical examination noted that Lee's "fine motor movements in the hands are normal. Grip is full." Tr. 355. No previous assessment indicated that Lee experienced any diminished feeling in her upper extremities. *See* Tr. 129, 209, 326, 343. Thus, there was substantial evidence to support the ALJ's conclusion that Lee did not experience significant manipulative limitations in her upper extremities.

Dr. Brandon noted that Lee's visual acuity uncorrected was OS 20/50, OD 20/70 OU 20/50. Tr. 355. The Vocational Analysis Worksheet, two Residual Functional Capacity examinations by State Agency physicians and the medical source statement by Lee's treating physician Dr. Castillo all indicate that she experienced no visual limitations. Tr. 129, 209, 326, 343. As noted by the ALJ, there is nothing in the record to indicate that Lee's slightly diminished uncorrected vision was significant or that if her vision was corrected she would experience any impairment-related visual restrictions. Tr. 10. Consequently, there was substantial evidence to support the ALJ's conclusion that Lee does not suffer from a "medically determinable 'severe' visual impairment." Tr. 10.

It was not error to present the complained-of hypothetical to the VE because there was substantial evidence to support the ALJ's election to discount not only Dr. Brandon's medical opinion, but also Lee's contention that she has less than full bimanual dexterity as evidenced by Dr. Brandon's opinion.

6

Failure to Properly Analyze the Credibility of Lee's Subjective Complaints

Lee asserts that the ALJ erred in assessing her credibility by emphasizing her ability to perform some household tasks and discounting her subjective complaints. Docket #12, p. 6. The ALJ concluded that her subjective complaints and hearing testimony were less than fully credible. Tr. 12. Lee testified that she had very limited physical functioning in that she could only walk ten feet, could lift nothing heavier than a bag of potato chips, could not bend at the waist or squat and then stand back, was unable to climb stairs; spent most of her day lying down, only got out of bed for five to ten minutes, and was unable to perform household chores. Tr. 23-24, 29-31.

The Social Security Administration [SSA] evaluates a claimant's symptoms, including pain, and the extent to which the symptoms are consistent with objective medical evidence. 20 C.F.R. § 416.929(a). Objective medical evidence includes laboratory findings, medical signs, reports from treating physicians, prescribed treatments, efforts to work and any other evidence showing how the claimant's impairments and related symptoms affect the claimant's ability to work. *Id.* The claimant's statements about her pain are not sufficient to establish disability. *Id.* In assessing a claimant's symptoms, the SSA considers the following factors: (1) her level of daily activity, (2) the location, duration and intensity of pain, (3) precipitating and aggravating factors, (4) the type, dosage and effectiveness of medications taken for the pain, including the side effects, (5) treatment other than medication for pain relief, (6) any measures used to relieve pain, and (7) other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. § 416.929(c)(3). The ALJ has the responsibility to resolve questions regarding the disabling nature of pain. *Wren v. Sullivan*, 925 F.2d 123, 128. (5th Cir.

1991). Further, "disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id*. at 129.

The ALJ concluded that the objective medical evidence did not support Lee's description of such limited functioning. Tr. 10. Dr. Brandon's medical evaluation of Lee demonstrated that she could squat and resume a standing position, albeit somewhat uncomfortably, and her joints exhibited full range of motion. Tr. 355. He found that she could frequently lift a minimum of 10 pounds, that she was limited to standing or walking only two hours a day and that sitting was not affected. Tr. 357-58. Dr. Castillo, Lee's treating physician, stated that Lee could only occasionally lift ten pounds, that she did have some postural limitations because of her lupus, that her ability to stand was limited to two hours a day and that her ability to sit was not affected. Tr. 341-42. The RFC performed by the State Agency doctor indicated that Lee was able to lift twenty pounds occasionally and ten pounds frequently, was able to stand/walk and sit for six hours in an eight-hour day and had no postural limitations. Tr. 324-25. Consequently, there was substantial evidence from objective sources to support the ALJ's conclusion that Lee's subjective descriptions of her physical condition and abilities were less than credible.

Moreover, despite plaintiff's objection to his doing so, the ALJ was required to review Lee's ability to perform daily activities in evaluating her symptoms, as it is one of the factors identified in the regulation. Although Lee had previously described the ability to perform household tasks such as cooking, take care of her children, do laundry, take care of her dog and go grocery shopping, Tr 111-12, her testimony at the hearing described drastically more limited functioning. Tr. 23-24, 29-31. There was substantial evidence to support the ALJ's conclusion

8

that Lee's description of her pain at the hearing was less than credible based on its inconsistency with the objective medical evidence and her inconsistent statements regarding her daily activities.

With respect to her glaucoma, there was substantial evidence to support the ALJ's conclusion that Lee's history of glaucoma was not severe enough to cause a medically determinable severe visual impairment, as discussed above. Tr. 10.

### **CONCLUSION**

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate judgment affirming the Commissioner's final decision will issue simultaneously with this Memorandum Opinion.

This the 29th day of March, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE